**LAW OFFICE OF DALE K. GALIPO**
Dale K. Galipo, SBN 144074
21800 Burbank Blvd., #310
Woodland Hills, CA 91367
TEL: 818.347.3333
FAX: 818.347.4118

**LAW OFFICE OF STEWART KATZ**
Stewart Katz, State Bar #127425
555 University Avenue, Suite 270
Sacramento, California 95825
Telephone: (916) 444-5678

Attorneys for Plaintiffs

### UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH AVILA, individually and as successor in interest to MARIO MATTHEWS, Deceased; MARK MATTHEWS, individually and as successor in interest to MARIO MATTHEWS, Deceased; <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF SACRAMENTO; MASON MCCANN; LORENZO VIDALES; TERRANCE GORDON; SACRAMENTO DOWNTOWN ARENA, LLC; UNIVERSAL PROTECTION SERVICE, LP; DRAKE QUITUGUA; CHAZ HAYES; JAMONTE FRAZIER; JMA VENTURES, LLC; DOES 1 through 40 <br><br> Defendants. <br> _____/ | Case No. <br><br> **COMPLAINT FOR VIOLATIONS OF FEDERAL CIVIL RIGHTS AND STATE LAW** <br><br> **[42 U.S.C. § 1983 and State Law Claims]** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs complain and allege as follows:

### I. INTRODUCTION

1.      Mario Matthews needlessly died because he was unreasonably restrained by the combined efforts of three private security guards and three Sacramento Police Department officers. The 125-pound Mario was being detained for potentially trespassing

after entering the city-owned Golden 1 Center through a propped-open door less than five minutes prior. Mario was slammed face-down to the concrete floor, handcuffed with his hands behind his back and then with maximum restraints applied to him. Mario was restrained face-down for 20 minutes with as many as four people on top of him. For four of those minutes, a security guard had a knee on Mario's neck. Mario displayed heavily labored breathing for most of this time before becoming non-responsive. All medical efforts proved futile.

## II. JURISDICTION AND VENUE

2.     This Complaint seeks damages and attorney's fees pursuant to Title 42 U.S.C. sections 1983 and 1988, for the violation of plaintiffs' civil rights. Jurisdiction is founded upon Title 28 U.S.C. sections 1331 and 1343. This court has supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. section 1367.

3.     All of the conduct described herein occurred within the County of Sacramento, California. Venue lies in the Eastern District of California pursuant to 28 U.S.C. section 1391(b)(2).

## III. EXHAUSTION OF GOVERNMENT TORT CLAIM PROCEDURES

4.     Plaintiffs filed timely government tort claims with the City of Sacramento as a precondition to the filing of the state law claims alleged in this action.

5.     Those claims were filed on December 27, 2019. The claim of Elizabeth Avila was rejected on January 9, 2020. The claim of Mark Matthews was rejected on or about January 22, 2020.

## IV. PARTIES

6.     Mario Matthews ("Mario") was unmarried and childless at the time of his death on July 4, 2019.

7.     Plaintiff Elizabeth Avila is Mario's mother and successor in interest. She resides in Sacramento, California.

8.      Plaintiff Mark Matthews is Mario's father and successor in interest. He resides in Sacramento, California.

9.      Plaintiffs bring this action as a survival and wrongful death action pursuant to sections 377.20 and 377.60 of the California Code of Civil Procedure. Plaintiffs also bring claims on behalf of the decedent under 42 U.S.C. section 1983 and section 1988 for violations of the United States Constitution and federal civil rights law.

10.     Defendant City of Sacramento is a political subdivision of the State of California, created and existing by virtue of the laws of the State of California. The City of Sacramento operates the Sacramento Police Department.

11.     Mason McCann is a police officer who was employed by the City of Sacramento, Sacramento Police Department. At all relevant times he was acting within the course and scope of that employment and under color of state law. He is being sued in his individual capacity.

12.     Lorenzo Vidales is a police officer who was employed by the City of Sacramento, Sacramento Police Department. At all relevant times he was acting within the course and scope of that employment and under color of state. He is being sued in his individual capacity.

13.     Terrance Gordon is a police officer who was employed by the City of Sacramento, Sacramento Police Department. At all relevant times he was acting within the course and scope of that employment and under color of state. He is being sued in his individual capacity and under color of state law.

14.     Doe defendants 1 through 10 are police officers who were employed by the City of Sacramento, Sacramento Police Department. At all relevant times they were acting within the course and scope of that employment and under color of state law. They are being sued in their individual capacities.

15.     JMA Ventures, LLC, is a California Limited Liability Corportation that was doing business in Sacramento, California. JMA Ventures, LLC, is the owner of Downtown Commons, commonly referred to as "DoCo". This area, formerly known as Downtown

Plaza, is a mixed-use entertainment and shopping complex located between 5th Street and 7th Street and J Street and L Street in downtown Sacramento, California.  JMA Ventures, LLC, is liable under respondeat superior for Doe defendants 21 through 40 and vicariously liable for Doe Defendants 11 through 20.

16.   Doe defendants 11 through 20 are agents, employees or contractors of JMA Ventures, LLC, and at all relevant times were acting in the course and scope of that employment and under color of state law.

17.   Sacramento Downtown Arena, LLC, is a Delaware Limited Liability Corporation that was doing business in Sacramento, California. Sacramento Downtown Arena, LLC, is the legal entity that operates the Golden 1 Center. Sacramento Downtown Arena is liable under respondeat superior for Doe defendants 21 through 30 and vicariously liable for Doe Defendants 11 through 20 and 31 through 40.

18.   Doe defendants 21 through 30 are agents, employees or contractors of Sacramento Downtown Arena, LLC, and at all relevant times were acting in the course and scope of that employment and under color of state law.

19.   Universal Protection Service, LP, is a Pennsylvania Limited Partnership that was doing business in Sacramento, California. Universal Protection Service, LP, provides uniformed private security in Sacramento under the name Allied Universal Security Service. Universal Protection Service, LP, claims it is "North America's leading security provider" with over 200,000 employees. Universal Protection Service, LP is licensed by the State of California Bureau of Security and Investigative Services as a private patrol operator and is liable under respondeat superior for Doe defendants 31 through 40.

20.   Drake Quitugua was employed as a uniformed security guard/ security supervisor for Universal Protection Service, and at all relevant times was acting in the course and scope of that employment and under color of state law.

21.   Chaz Hayes was employed as a uniformed security guard for Universal Protection Service, and at all relevant times was acting in the course and scope of that employment and under color of state law.

22.     Jamonte Frazier was employed as a security guard for Universal Protection Service, and at all relevant times was acting in the course and scope of that employment and under color of state law.

23.     Doe defendants 31 through 40 are agents, employees or contractors of Universal Protection Service, LP, and at all relevant times were acting in the course and scope of that employment and under color of state law.

24.     At all relevant times, all defendants other than the City of Sacramento were acting in concert with each other and in furtherance of a common goal and/or objective.

25.     Plaintiffs will amend the Complaint once they learn the names of the individual Doe defendants.

26.     The declarations required under California Code of Civil Procedure section 377.32 for persons bringing an action as a decedent's successor in interest are in Attachment 1 to this Complaint.

## V. FACTUAL ALLEGATIONS

27.     The Golden 1 Center is an arena owned by the City of Sacramento and operated by a private entity, the Sacramento Downtown Arena, LLC. It is located in downtown Sacramento between J Street and K Street and 5th Street and 7th Street.   The Golden 1 Center opened in 2016 and contains the home court of the NBA's Sacramento Kings.

28.     Mario Matthews was the beloved only child and son of the plaintiffs, Elizabeth Avalos and Mark Matthews. Mario was also very close to his extended family. He was 39 years old and a sports fan. He worked as a warehouseman.

29.     On July 2, 2019, Mario stood 5 feet and seven inches tall and weighed a non-threatening 125 pounds.

30.     On the evening of July 1, 2019, as part of the second annual California Classic, there had been a two-game basketball summer showcase featuring players from the Sacramento Kings, Golden State Warriors, Miami Heat and Los Angeles Lakers at the

Golden 1 Center, followed by a free outdoor concert featuring a performance by hip-hop artist T-Pain.

31.     Mario is believed to have attended the concert.

32.     At around 3:30 a.m. on July 2, 2019, Mario entered the Golden 1 Center through a propped-open door which was part of the main entrance.

33.     After entering the building, Mario went down to the basketball court. He was shirtless and wearing sweatpants and red sneakers.

34.     Mario was spotted by Golden 1 Center employees who monitored him from a distance as he went down to the basketball court. Once on the court, he briefly lay down in the middle of the Sacramento Kings center court logo and then ran around the basketball court as if he were dribbling and shooting a basketball. Defendants Quitugua and Hayes, who were working security for DoCo, arrived and began to aggressively chase Mario.

35.     Mario fled from the basketball court through an access tunnel and into a hallway leading to the visiting team locker room. There was no exit from the hallway except to turn around and come back.

36.     Mario stopped running when defendants Quitugua and Hayes caught up to him. Without saying anything to Mario, Hayes began grabbing Mario's wrists and Mario pulled his wrists back. Quitugua then slammed Mario face-first into the wall and then tackled him onto the concrete floor, face-down. This caused Mario to bleed, leaving blood both on the wall and floor. Quitugua later acknowledged that he took Mario "down pretty hard."

37.     Once Mario was face down on the floor, his hands were handcuffed behind his back and defendants Quitugua and Hayes got on top of his back.

38.     While Mario was face-down on the floor with Quitugua and Hayes on his back, Quitugua used his right knee to apply pressure to the side of Mario's neck for approximately four and half minutes.

Matthews-Complaint                                                                      6

39.     Defendants Quitugua and Hayes were joined by defendant Frazier. Frazier was also a Universal Protection Service security officer, though he was not wearing the same uniform. He also piled onto Mario's back.

40.     Mario had been restrained face-down and handcuffed for approximately ten minutes before defendant McCann- a Sacramento Police Department Officer- arrived and also got on top of Mario. The police had been summoned to deal with a potential trespasser.

41.     The first audio recording of the incident came from McCann's body-worn camera. By that time, it was apparent that Mario was in severe distress, including respiratory distress.

42.     When Defendant McCann arrived, he simply followed the lead of the dangerously ignorant security guards in their course of restraining Mario.

43.     McCann asked that other police officers who were on their way to bring with them maximum restraints which the police department refers to as "max restraints". These involve, in addition to handcuffs, that the restrained person's legs be bound together with one strap that is then attached to another strap placed around the waist. This extreme form of restraint is only intended for individuals who are violently resisting. Neither McCann nor any of the other police officers claim that Mario was then violently resisting.

44.     Defendants Vidales and Gordon- also Sacramento Police Department Officers- arrived with the "max restraints" that McCann had requested. Vidales and Gordon replaced Quitugua and Hayes on top of Mario.

45.     Adding to the handcuffs which were already on Mario, McCann fastened the leg portion of the "max restraints" around Mario's legs. To do so, McCann pushed Mario's feet toward the small of his back, causing his knees to bend, and applied continuing pressure. Vidales attached the waist portion of the restraints. As the maximum restraints were being applied, or within a few seconds thereof, Mario became non-responsive.

46.     Perhaps in denial of Mario's now-catatonic state, defendants McCann, Vidales and Gordon attempted to pull Mario to his feet, but he immediately flopped back to

the ground.  At this point, it was clear to everyone present that Mario was incapable of getting up and in need of urgent resuscitation efforts.

47.     The fire department had been called by an arena employee a few minutes earlier because of the amount of blood that was on the walls, floor and Mario's body as a result of the force used by defendants Quitugua and Hayes. The fire department arrived, attempted to resuscitate Mario and then transported him to Sutter General Hospital.

48.     Prior to the fire department arriving, the Sacramento Police Officer defendants engaged in one-sided and solicitous conversations with Mario, who, given his condition, was unable to respond to their suddenly expressed concern for his well-being.

49.     Efforts at the hospital to help Mario were futile.  He was taken off life support and pronounced dead on July 4, 2019.

50.     Prior to his death, and as a direct consequence of the defendants' actions, undertaken individually and in concert with each other, Mario experienced conscious, excruciating pain and suffering.

51.     The Sacramento County Coroner acknowledged that the restraint was a cause of Mario's death.

52.     In total, Mario was handcuffed face-down, with his hands behind his back, and with as many as four men on his back, before becoming non-responsive after the "max restraints" were applied. This included four and a half minutes with defendant Quitugua compressing Mario's neck.

53.     In addition to the injury or injuries that caused blood to come from Mario's head and mouth, Mario sustained bruising and abrasions to his forehead, bruising, hemorrhaging and abrasions to his left wrist and right forearm, bruising and hemorrhaging to his right knee, both shins and both ankles. Additionally, the coroner's pathologist noted deep bruising of Mario's back as a result of the weight and pressure that had been placed upon him.

54.     None of the defendants have claimed to have suffered any injuries.

55.     The manner in which the defendants seized Mario was unlawful, unreasonable and evidenced inadequate training regarding positional asphyxia and/or indifference to the consequences of applying the unreasonable amount of force used, including acting in disregard to the well-known risks associated with placing weight onto a restrained person.

56.     Universal Protection Service, LP, only required and provided grossly inadequate training of their security guards, including defendants Quitugua, Hayes and Frazier. Quitugua was the night supervisor, despite having less than four months of security experience. His training consisted of a one-day class. Universal Protection Service, LP, permitted and encouraged their security guards to use handcuffs despite their ignorance about how to safely handcuff and restrain an individual. As evidenced by Quitugua's status as a supervisor, there effectively was no supervision of the security officers.

57.     The City of Sacramento had constitutionally inadequate training regarding safely restraining persons. This lack of training, policies and practices was evidenced by the following facts: (1) Mario was kept face-down, handcuffed with hands behind his back and with weight on his back for 20 minutes; (2) no actions were taken for his obvious respiratory distress prior to his becoming non-responsive; (3) max-restraints were applied on Mario even though he was not being violent.

58.     The City of Sacramento's handcuffing policy is constitutionally deficient in that it fails to prohibit the techniques applied in this case or provide other substantive guidance which would have prevented Mario's death. In particular, it fails to specify the risk factors pertaining to the duration of restraint, position of restraint and the position of restraint devices, the medical and mental condition of the person being restrained, the effects of weight on top of the person being restrained and recognizing and responding to persons being restrained who are in extreme respiratory distress.

59.     Mario had a close and loving relationship with both his mother and father as well as other relatives throughout his life.

60.     As Mario's successors in interest, plaintiffs are entitled to damages for his conscious pain and suffering, as well as for his loss of life and loss of enjoyment of life.

61.     In addition, plaintiffs have suffered and seek damages for the loss of their familial relationships with Mario, including loss of love, companionship, comfort, affection, society, services, solace and moral support.

62.     Plaintiffs further seek compensation for damages sustained directly from Mario's death, including funeral and burial expenses.

## VI. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Unreasonable Seizure/ Excessive Force**
**(42 U.S.C. section 1983)**
*Against defendants McCann, Vidales, Gordon,*
*Quitugua, Hayes, Frazier and Does 1 through 40*

63.     Plaintiffs, as successors in interest, re-allege and incorporate by reference paragraphs 1 through 62, as though fully set forth herein.

64.     These defendants' actions alleged herein, including but not limited to keeping Mario face down, handcuffed and maximumly restrained, while putting weight on his back and gratuitously applying pressure to his neck, were unreasonable and excessive uses of force. This conduct violated Mario's rights protected by the Fourth Amendment of the United States Constitution.

65.     As a direct and proximate result of said acts and/or omissions by defendants, Mario suffered injuries and damages as alleged herein. Said acts by defendants include their being integral participants to the use of unreasonable force. Said omissions include these defendants failing to intervene to prevent the use of excessive force by other officers or security guards.

66.     The aforementioned acts and/or omissions of said defendants were willful, wanton, malicious and done with conscious or reckless disregard for the rights and safety of the decedent, thereby entitling plaintiffs to an award of exemplary and punitive damages according to proof against these individual defendants.

**SECOND CLAIM FOR RELIEF**
**"Bane Act"**
**(California Civil Code Section 52.1, et seq.)**
*Against defendants McCann, Vidales, Gordon*
*Quitugua, Hayes, Frazier and Does 1 through 40*

67.    Plaintiffs, as successors in interest, re-allege and incorporate by reference paragraphs 1 through 66, as though fully set forth herein.

68.    Defendants' actions as alleged herein, including but not limited to keeping Mario face down, handcuffed and maximumly restrained, while putting weight on his back were unreasonable and excessive intentional uses of force which violated rights protected by the California State Constitution, including the rights to be free of unreasonable search and seizures. Defendants' conduct is therefore actionable under California Civil Code Section 52.1, et seq., the "Bane Act."

69.    As a direct and proximate result of said acts and/or omissions by defendants, Mario suffered injuries and damages as alleged herein. Said acts by defendants include their being integral participants to the use of unreasonable force. Said omissions include these defendants failing to intervene to prevent the use of excessive force by the other officers as well as the security guards.

70.    The aforementioned acts and/or omissions of said defendants were willful, wanton, malicious and done with conscious or reckless disregard for the rights and safety of the decedent, thereby entitling plaintiffs to an award of both general and punitive damages according to proof against these defendants.

71.    Defendant City of Sacramento is liable for the wrongful acts of defendant McCann, Vidales, Gordon and Does 1 through 10 pursuant to California Government Code section 815.2, subdivision (a), which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability.

### THIRD CLAIM FOR RELIEF
**Negligence/Wrongful Death**
**(California State Common Law)**
*Against all Defendants*

72.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 71, as though fully set forth herein.

73.     Defendants, and each of them, owed plaintiffs and the decedent a duty of care.

74.     Defendant Does 1 through 10 had a duty to act with reasonable care, including by using appropriate tactics, acting consistently with and not disregarding their training regarding positional asphyxia, giving appropriate commands and warnings, refraining from using unreasonable force, refraining from using tactics and procedures that violate generally accepted law enforcement standards, and refraining from violating plaintiffs' and the decedent's rights under the United States and California Constitutions and as otherwise protected by law.

75.      Universal Protection Service, LP, Sacramento Downtown Arena, LLC, JMA Ventures, LLC, and defendant Does 11 through 40 each had a duty to act with reasonable care, including not using excessive force when restraining people and to do so in a safe manner, taking into account the circumstances of the restraint and condition of the person being restrained.

76.     Universal Protection Service, LP, Sacramento Downtown Arena, LLC, and JMA Ventures, LLC, each had a duty to properly train and supervise their employees and to ensure that their agents and contractors were properly trained and supervised regarding not using excessive force when restraining people and doing so in a safe manner, taking into account the circumstances of the restraint and condition of the person being restrained. Universal Protection Service, LP, had an obligation to properly train and supervise their security guards in the use of instruments and actions as undertaken by their employees in this case. This includes the use of control holds, the use of handcuffs, the law regarding trespass, and how to initiate a non-violent interaction.

77.     Defendants breached their duties, proximately causing injuries and damages to the decedent and plaintiffs as alleged herein. As a direct and foreseeable result of defendants' negligent acts or omissions, the decedent and plaintiffs suffered injuries and damages as alleged herein.

78.     The aforementioned acts and/or omissions of all defendants other than the City of Sacramento were willful, wanton, malicious and done with conscious or reckless disregard for the rights and safety of the decedent, thereby entitling plaintiffs to an award of exemplary and punitive damages according to proof against the individual non-entity defendants.

79.     Defendant City of Sacramento is liable for the wrongful acts of defendants McCann, Vidales, Gordon and Does 1 through 10 pursuant to California Government Code section 815.2, subdivision (a), which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability.

**FOURTH CLAIM FOR RELIEF**
**Battery / Wrongful Death**
**(California State Common Law)**
*Against defendants Universal Protection Service, LP, Sacramento Downtown Arena, LLC,*
*JMA Ventures, LLC, McCann, Vidales, Gordon, Quitugua, Hayes, Frazier and all Does*

80.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 79, as though fully set forth herein.

81.     The conduct of Universal Protection Service, LP, Sacramento Downtown Arena, LLC, JMA Ventures, LLC, McCann Vidales, Gordon, Quitugua, Hayes, Frazier and all Doe defendants in using the unreasonable and excessive force as alleged herein, including keeping Mario face down, handcuffed and maximumly restrained, while putting weight on his back and gratuitously applying pressure to his neck, as well as striking Mario or causing his body to strike hard surfaces, was wrongful, intentional and unwelcome bodily contact, constituting battery.

82.     As a direct and proximate result of said acts and/or omissions by defendants, the decedent and plaintiffs suffered the injuries alleged herein, entitling them to damages for wrongful death and loss of life and enjoyment of life.

83.     The aforementioned acts and/or omissions of said defendants were willful, wanton, malicious and done with conscious or reckless disregard for the rights and safety of the decedent, thereby entitling plaintiffs to an award of exemplary and punitive damages according to proof against these defendants.

84.     Defendant City of Sacramento is liable for the wrongful acts of defendants McCann, Vidales, Gordon and Does 1 through 10 pursuant to California Government code section 815.2, subdivision (a), which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability.

### FIFTH CLAIM FOR RELIEF
**Municipal Liability – Failure to Train and/or Supervise**
**(42 U.S.C. § 1983)**
*Against Defendant City of Sacramento and Doe defendants 1 through 10*

85.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 84, as though fully set forth herein.

86.     The conduct of defendants McCann, Vidales, Gordon and Does 1 through 10 deprived Mario of particular rights under the United States Constitution.

87.     Defendant City of Sacramento and Does 1 through 10 failed to properly and adequately train and/or supervise defendants McCann, Vidales, Gordon and Does 1 through 10 regarding the use of physical force, less than lethal force and lethal force, and the use of handcuffs and maximum restraints. There was also a failure to train regarding positional asphyxia's lethal consequences.

88.     Defendant City of Sacramento and Does 1 through 10 were deliberately indifferent to the obvious consequences of its total failure to train and/or to supervise officers.

89.     The failure of the City of Sacramento and Does 1 through 10 to provide adequate training and/or supervision caused the deprivation of Mario's rights by defendants and is so closely related to the deprivation of rights as to be the moving force that caused the ultimate injuries.

**SIXTH CLAIM FOR RELIEF**
**Municipal Liability – Deficient Customs, Practices or Policies**
**(42 U.S.C.  1983)**
*Against Defendant City of Sacramento*

90.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 89, as though fully set forth herein.

91.     The conduct of Doe defendants 1 through 10 deprived Mario of particular rights under the United States Constitution.

92.     The aforementioned acts and/or omissions of defendants were the direct and proximate result of customs, practices, policies and/or procedures, or the lack thereof, of the City of Sacramento and any of Doe defendants 1 through 10 who had policy making authority.

93.     Such deficient customs, practices, policies and/or procedures include, but are not limited to, the City of Sacramento's handcuffing and restraint policies as described in paragraphs 57 and 58 above.

94.     The failure of the City of Sacramento to promulgate adequate customs, practices, policies and/or procedures caused the deprivation of Mario's rights by defendants and is so closely related to the deprivation of rights as to be the moving force that caused the ultimate injuries.

**SEVENTH CLAIM FOR RELIEF**
**Substantive Due Process – Loss of Family Relationships**
**(42 U.S.C. § 1983)**
*Against defendants McCann, Vidales, Gordon,*
*Quitugua, Hayes, Frazier and Does 1 through 40*

95.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 94, as though fully set forth herein.

96.     The conduct of the defendants as alleged herein, including but not limited to the excessive and deadly force used upon Mario and specifically the manner in which he was restrained, caused his untimely and wrongful death and deprived the plaintiffs of their liberty interests in a family relationship with him, in violation of their substantive due process rights as guaranteed by the Fourteenth Amendment to the United States Constitution.

97.     As a direct and proximate result of said acts and/or omissions by defendants, decedent suffered injuries and damages as alleged herein.

98.     The aforementioned acts/and or omissions of said defendants were willful, wanton, malicious and done with conscious or reckless disregard for the rights and safety of the decedent, thereby entitling plaintiffs to an award of exemplary and punitive damages according to proof against these defendants.

99.     The officers had sufficient time to deliberate the nature and probable consequences of their method of restraining Mario

**EIGHTH CLAIM FOR RELIEF**
**Fourth Amendment – Detention and Arrest**
**(42 U.S.C. § 1983)**
*Against defendants McCann, Vidales, Gordon,*
*Quitugua, Hayes, Frazier and Does 1 through 40*

100.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 99, as though fully set forth herein.

101.     These defendants detained Mario in an unreasonable manner, given the de minimus nature of the tenuous trespassing violation they were investigating, and without reasonable suspicion.

102.     When said defendants did the acts described herein, including but not limited to slamming Mario into the wall and onto the ground and putting unreasonable weight on him for an unreasonable amount of time, they violated Mario's right to be secure in his person against unreasonable searches and seizures as guaranteed under the

1   Fourth Amendment to the United States Constitution and applied to state actors by the
2   Fourteenth Amendment.

3       103.    The conduct of these defendants was willful, wanton, malicious and done
4   with reckless disregard for Mario's rights and safety, and therefore warrants the imposition
5   of exemplary and punitive damages as to these defendants.

6       104.    As a result of the misconduct of these defendants as described herein, Mario
7   and plaintiffs suffered the injuries described herein.

8
9                          **NINTH CLAIM FOR RELIEF**
                           **False Arrest/ False Imprisonment**
10   *Against defendants Universal Protection Service, LP, Sacramento Downtown Arena, LLC,*
                  *JMA Ventures, LLC, McCann, Vidales, Gordon,*
11               *Quitugua, Hayes, Frazier and Does 1 through 40*

12      105.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 104,
13   as though fully set forth herein.

14      106.    Defendants intentionally deprived Mario of his freedom of movement by use
15   of force, threats of force, menace and unreasonable duress. Defendants detained Mario
16   without reasonable suspicion.

17      107.    Mario did not consent to the detention.

18      108.    The conduct of defendants in illegally detaining Mario was a substantial
19   factor in causing the harm alleged herein.

20      109.    Defendant City of Sacramento is liable for the wrongful acts of defendants
21   McCann, Vidales, Gordon and Does 1 through 10 pursuant to California Government code
22   section 815.2, subdivision (a), which provides that a public entity is liable for the injuries
23   caused by its employees within the scope of employment if the employee's act would
24   subject him or her to liability.

25      110.    The conduct of these defendants was malicious, wanton, oppressive and
26   accomplished with a conscious disregard for Mario's rights, entitling plaintiffs to an award
27   of exemplary and punitive damages.

28

## VIII. PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for the following relief:

1.      For compensatory, statutory, general and special damages against each defendant, jointly and severally, in the amount proven at trial and as allowed by law;

2.      For punitive and exemplary damages against each defendant other than the City of Sacramento in an amount appropriate to punish that defendant and deter others from engaging in similar misconduct, as allowed by law;

3.      For such other relief, including injunctive and/or declaratory relief, as the Court may deem proper; and

4.      For costs of suit and costs and reasonable attorneys' fees pursuant to 42 U.S.C. section 1988 and as otherwise authorized by statute or law.


Dated: July 7, 2020                                        Respectfully submitted,


                                                           /s/ Dale K. Galipo
                                                           DALE K. GALIPO,
                                                           Attorney for Plaintiffs

                                                           /s/ Stewart Katz
                                                           STEWART KATZ,
                                                           Attorney for Plaintiffs


## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand trial by jury.


Dated: July 7, 2020                                        Respectfully submitted,


                                                           /s/ Dale K. Galipo
                                                           DALE K. GALIPO,
                                                           Attorney for Plaintiffs

                                                           /s/ Stewart Katz
                                                           STEWART KATZ,
                                                           Attorney for Plaintiffs

# Attachment 1

1

**LAW OFFICE OF DALE K. GALIPO**

2

Dale K. Galipo, SBN 144074
21800 Burbank Blvd., #310

3

Woodland Hills, CA 91367
TEL:  818.347.3333

4

FAX:  818.347.4118

5

**LAW OFFICE OF STEWART KATZ**
Stewart Katz, State Bar #127425

6

555 University Avenue, Suite 270

7

Sacramento, California 95825
Telephone: (916) 444-5678

8

9

Attorneys for Plaintiffs

10

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

11

12

| ELIZABETH AVILA, individually and as | Case No. |
|---|---|
| successor in interest to MARIO MATTHEWS, | |
| Deceased; MARK MATTHEWS, individually and | **DECLARATION BY PERSON** |
| as successor in interest to MARIO MATTHEWS, | **BRINGING THIS ACTION AS** |
| Deceased; | **DECEDENT'S SUCCESSORS** |
| | **IN INTEREST** |

13

14

15

        Plaintiffs,

16

     vs.

17

CITY OF SACRAMENTO; MASON MCCANN;

18

LORENZO VIDALES; TERRANCE GORDON;
SACRAMENTO DOWNTOWN ARENA, LLC;

19

UNIVERSAL PROTECTION SERVICE, LP;
DRAKE QUITUGUA; CHAZ HAYES; JAMONTE

20

FRAZIER; JMA VENTURES, LLC; DOES 1

21

through 40

22

        Defendants.

23

_____/

24

25

26

    Pursuant to California Code of Civil Procedure section 377.32, Plaintiffs submit this

27

declaration in support of bringing this action as decedent's successor in interest.

28

    I, Elizabeth Avila, declare as follows:

1

1.     The claims in this action arise out of the death of the decedent, Mario Matthews.

2.     Mario Matthews died on July 4, 2019 in Sacramento County.

3.     No proceeding is now pending in California for administration of the decedent's estate.

4.     There was no administration of the decedent's estate.

5.     Declarant, Elizabeth Avila, is the mother of Marion Matthews and a next of kin. Declarant, Elizabeth Avila, is a successor in interest as defined in section 377.11 of the California Code of Civil Procedure and succeeds to the decedent's interest in this action.

6.     No other person has a superior right to commence this action or proceeding or to be substituted for Mario Matthews in the pending action or proceeding.

7.     A certified copy of Mario Matthews' death certificate is attached hereto.

I declare under penalty of perjury that the foregoing is true and correct of my own knowledge, and if called to do so, I could and would competently testify as to the matters set forth herein.  Executed this 3rd Day of July 2020, at Sacramento, California.

/s/ Elizabeth Avila

_____

Elizabeth Avila, Declarant

2

1   **LAW OFFICE OF DALE K. GALIPO**

2   Dale K. Galipo, SBN 144074
    21800 Burbank Blvd., #310

3   Woodland Hills, CA 91367
    TEL:  818.347.3333

4   FAX:  818.347.4118

5   **LAW OFFICE OF STEWART KATZ**
    Stewart Katz, State Bar #127425

6   555 University Avenue, Suite 270
    Sacramento, California 95825

7   Telephone: (916) 444-5678

8

    Attorneys for Plaintiffs

9

10          **UNITED STATES DISTRICT COURT**

          **EASTERN DISTRICT OF CALIFORNIA**

11

12   ELIZABETH AVILA, individually and as       Case No.
    successor in interest to MARIO MATTHEWS,

13   Deceased; MARK MATTHEWS, individually and   **DECLARATION BY PERSON**
    as successor in interest to MARIO MATTHEWS,   **BRINGING THIS ACTION AS**

14   Deceased;                          **DECEDENT'S SUCCESSORS**
                                   **IN INTEREST**

15          Plaintiffs,

16       vs.

17   CITY OF SACRAMENTO; MASON MCCANN;

18   LORENZO VIDALES; TERRANCE GORDON;
    SACRAMENTO DOWNTOWN ARENA, LLC;

19   UNIVERSAL PROTECTION SERVICE, LP;
    DRAKE QUITUGUA; CHAZ HAYES; JAMONTE

20   FRAZIER; JMA VENTURES, LLC; DOES 1

21   through 40

22          Defendants.

23   _____/

24       Pursuant to California Code of Civil Procedure section 377.32, Plaintiffs submit this

25   declaration in support of bringing this action as decedent's successor in interest.

26       I, Mark Matthews, declare as follows:

27       1.     The claims in this action arise out of the death of the decedent, Mario

28   Matthews.

                                                                1

2.      Mario Matthews died on July 4, 2019 in Sacramento County.

3.      No proceeding is now pending in California for administration of the decedent's estate.

4.      There was no administration of the decedent's estate.

5.      Declarant, Mark Matthews, is the father of Mario Matthews and a next of kin. Declarant, Mark Matthews, is a successor in interest as defined in section 377.11 of the California Code of Civil Procedure and succeeds to the decedent's interest in this action.

6.      No other person has a superior right to commence this action or proceeding or to be substituted for Mario Matthews in the pending action or proceeding.

7.      A certified copy of Mario Matthews' death certificate is attached hereto.

I declare under penalty of perjury that the foregoing is true and correct of my own knowledge, and if called to do so, I could and would competently testify as to the matters set forth herein.  Executed this 3rd Day of July 2020, at Sacramento, California.

/s/ Mark Matthews

_____

Mark Matthews, Declarant

# STATE OF CALIFORNIA

# COUNTY OF SACRAMENTO

## DEPARTMENT OF HEALTH SERVICES

### CERTIFICATE OF DEATH

| STATE FILE NUMBER | LOCAL REGISTRATION NUMBER |
|---|---|
| 3052019140050 | 3201934006336 |

| 1. NAME OF DECEDENT - FIRST (Given) | (Middle) | (Last) | 4. DATE OF BIRTH mm/dd/ccyy | 5. AGE Yrs | 6. SEX |
|---|---|---|---|---|---|
| MARIO | MARCUS | MATTHEWS | 1979 | 39 | M |

AKA, ALSO KNOWN AS - (Include full AKA (FIRST, MIDDLE, LAST))

| 7. BIRTH STATE/FOREIGN COUNTRY | SOCIAL SECURITY NUMBER | EVER IN US ARMED FORCES | MARITAL STATUS | 7. DATE OF DEATH mm/dd/ccyy | 8. HOUR 24 Hours |
|---|---|---|---|---|---|
| CA | | X NO | NEVER MARRIED | 07/04/2019 | 1453 |

| EDUCATION - Highest Level | WAS DECEDENT HISPANIC/LATINO | DECEDENT'S RACE | YEARS IN OCCUPATION |
|---|---|---|---|
| GED | X YES MEXICAN AMERICAN | MEXICAN AMERICAN | 8 |

| USUAL OCCUPATION | KIND OF BUSINESS OR INDUSTRY | |
|---|---|---|
| WAREHOUSE WORKER | WAREHOUSE | |

| DECEDENT'S RESIDENCE - Street and number, or location |
|---|
| 201 HEMFORD CIRCLE |

| CITY | COUNTY/PROVINCE | ZIP CODE | YEARS IN COUNTY | STATE/FOREIGN COUNTRY |
|---|---|---|---|---|
| SACRAMENTO | SACRAMENTO | 95822 | 32 | CA |

| INFORMANT'S NAME, RELATIONSHIP | INFORMANT'S MAILING ADDRESS |
|---|---|
| ELIZABETH AVILA, MOTHER | SACRAMENTO, CA 95828 |

| NAME OF SURVIVING SPOUSE/SRDP-FIRST | MIDDLE | LAST (BIRTH NAME) |
|---|---|---|
| | | |

| NAME OF FATHER/PARENT-FIRST | MIDDLE | LAST | BIRTH STATE |
|---|---|---|---|
| MARK | EDWARD | MATTHEWS | CA |

| NAME OF MOTHER/PARENT-FIRST | MIDDLE | LAST (BIRTH NAME) | BIRTH STATE |
|---|---|---|---|
| ELIZABETH | TINA | AVILA | CA |

| DISPOSITION DATE mm/dd/ccyy | PLACE OF FINAL DISPOSITION |
|---|---|
| 07/12/2019 | ELIZABETH AVILA RESIDENCE, SACRAMENTO, CA 95828 |

| TYPE OF DISPOSITION(S) | SIGNATURE OF EMBALMER | LICENSE NUMBER |
|---|---|---|
| CR/RES | NOT EMBALMED | |

| NAME OF FUNERAL ESTABLISHMENT | LICENSE NUMBER | SIGNATURE OF LOCAL REGISTRAR | DATE mm/dd/ccyy |
|---|---|---|---|
| RIVER CITIES FUNERAL CHAPEL | FD1082 | OLIVIA KASIRYE, MD | 07/11/2019 |

| 101. PLACE OF DEATH | 102. IF HOSPITAL, SPECIFY ONE | 103. IF OTHER THAN HOSPITAL, SPECIFY ONE |
|---|---|---|
| SUTTER MEDICAL CENTER - SACRAMENTO | X IP | |

| 104. FACILITY ADDRESS OR LOCATION WHERE DEATH OCCURRED (Street and number, or location) | 105. CITY |
|---|---|
| 2825 CAPITOL AVENUE | SACRAMENTO |
| SACRAMENTO | |

| 107. CAUSE OF DEATH | Immediate Cause | Approximate Interval Onset to Death | 108. DEATH REPORTED TO CORONER? |
|---|---|---|---|
| IMMEDIATE CAUSE | PENDING | | X YES |
| | FEND | | 19-03444 |
| | | | 110. BIOPSY PERFORMED? X NO |
| | | | 111. AUTOPSY PERFORMED? X YES |
| | | | 112. USED IN DETERMINING CAUSE X YES |

| 112. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN 107 |
|---|

| 113. WAS OPERATION PERFORMED FOR ANY CONDITION IN ITEM 107 OR 112 |
|---|

| 114. I CERTIFY... | 115. SIGNATURE AND TITLE OF CERTIFIER | 116. LICENSE NUMBER | 117. DATE mm/dd/ccyy |
|---|---|---|---|

| 118. TYPE ATTENDING PHYSICIAN'S NAME, MAILING ADDRESS, ZIP CODE |
|---|

| 119. I CERTIFY... | MANNER OF DEATH | 120. INJURED AT WORK? | 121. INJURY DATE mm/dd/ccyy | 122. HOUR (24 Hours) |
|---|---|---|---|---|
| | Natural ☐ Accident ☐ Homicide ☐ Suicide X Pending ☐ Could not be determined | YES ☐ NO ☐ UNK ☐ | | |

| 123. PLACE OF INJURY (e.g. home, construction site, wooded area, etc.) |
|---|

| 124. DESCRIBE HOW INJURY OCCURRED (Events which resulted in injury) |
|---|

| 125. LOCATION OF INJURY (Street and number, or location, and city, and zip) |
|---|

| 126. SIGNATURE OF CORONER / DEPUTY CORONER | 127. DATE mm/dd/ccyy | 128. TYPE NAME, TITLE OF CORONER / DEPUTY CORONER |
|---|---|---|
| JENNIFER BECKER | 07/11/2019 | JENNIFER BECKER, DEPUTY CORONER |

| STATE REGISTRAR | A | B | C | D | E | FAX AUTH # | CENSUS TRACT |
|---|---|---|---|---|---|---|---|
| | | | | | *010001004258542* | | |

### CERTIFIED COPY OF VITAL RECORDS
STATE OF CALIFORNIA, COUNTY OF SACRAMENTO

This is a true and exact reproduction of the document officially registered
and placed on file with Sacramento County Department of Health Services.

**DATE ISSUED** July 18, 2019

*001818121*

OLIVIA KASIRYE, MD
LOCAL REGISTRAR

This copy is not valid unless prepared on an engraved border, displaying the date, seal and signature of the registrar.

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE